## Logan *versus* Caffrey.

Where labour is performed for another, at various times, under the same *entire* contract, and there is a recovery in one suit upon such contract, the party cannot maintain a second action, even on clear proof that no evidence was given in the first, as to part of the demand in controversy.

Nor will a formal withdrawal from the consideration of the jury of one of the items claimed in the first suit, and the entry of such withdrawal on record, enable the party to maintain a second action to recover the item so withdrawn.

ERROR to the Common Pleas of *Philadelphia.*

This action was originally brought before an alderman, by John Caffrey against Gustavus G. Logan, to recover the sum of $67.25, for his wages as a day labourer, viz.: for 67¼ days' work between the 7th of November 1854, and the 5th of February 1855, at one dollar per day. The alderman gave judgment for the plaintiff, from which the defendant appealed. The declaration contained only the common counts; to which the defendant pleaded *non assumpsit*, set off, payment with leave, &c.

There had been a former action tried between the same parties in the District Court of Philadelphia, the pleadings wherein were the same as those in the present suit. In that cause a bill of particulars was furnished, as follows:

[Logan *v.* Caffrey.]

CAFFREY  ⎱   D. C.
  *v.*     ⎰  D. 55, 1370.
LOGAN.

### Bill of Particulars of Plaintiff's Claim.

49 days' work performed by plaintiff for the def't. between
  10th July 1854, and 16th Sept. 1854, @ $1.12½ per day, $55.12
67¼ days' work, between 7th November 1854, and 5th Feb-
  ruary 1855, @ $1 per day, . . . . . . . . . .  67.25
20 days' work in April 1855, @ $1, . . . . . . .  20.00
26  do   "    May,   "      "     . . . . . . .  26.00
24¼ do   "    June,  "      "     . . . . . . .  24.25
23½ do   "    July,  " @ $1.50, . . . . . . .  35.25
16  do   "    Aug.,  "      "     . . . . . . .  24.00
11  do   "     "     " @ $1,   . . . . . . .  11.00
24  do   "    Sept., "      "     . . . . . . .  24.00
25¾ do   "    Oct.,  "     . "    . . . . . . .  25.75
2¾  do   "    Nov.,  "      "     . . . . . . .   2.75

                                              ———————
                                              $315.37

F. C. BRIGHTLY, *for Plaintiff.*

15 February 1856.

On the trial of that case, no evidence having been given of the second item in the bill of particulars, the plaintiff, by leave of the court, withdrew that part of his claim from the consideration of the jury, and the following entry was made on the record.

"And now, May 2d, 1856, the plaintiff withdraws from the consideration of the jury, with leave of the court, the second item in his bill of particulars, being a claim for sixty-seven and a quarter days' work, between the seventh of November 1854, and the fifth of February 1855, amounting to sixty-seven dollars and twenty-five cents, reserving his right to bring another action for this claim."

There was a verdict and judgment in that suit for $25.91. And the plaintiff afterwards brought this action to recover the item so withdrawn on the trial of the former suit.

On the trial of the present case, the following evidence was given (*inter alia*) for the plaintiff:

*James Hickey,* sw. "I was in the employ of the defendant from November, A. D. 1854, to February, 1855; I was employed as a labourer; Caffrey, the plaintiff, was there also, during that time; he was in the employ of the defendant; he was a general hand on the farm; he was at work for defendant prior to November 1854, and after February 1855; he was there altogether two or three years; he worked pretty steadily, excepting on rainy days; his wages were one dollar per day; I received that. The hands were not paid

[Logan *v.* Caffrey.]

regularly; defendant paid them when they left; sometimes he paid them in money, sometimes he gave them orders."

*John Leo,* sw. "I worked with Caffrey from November to February; he worked pretty steady that winter: Mr. Logan paid me; the wages paid by Mr. Logan were one dollar per day, winter and summer; the hands worked off and on according to the weather, and the condition of defendant's business; defendant is a farmer."

The defendant gave in evidence the record of the former suit in the District Court, and submitted the following points, upon which he requested the learned judge to charge the jury:

1. That if the jury believe that the work and labour sued for in this action, and the work and labour for which a recovery was had in the former suit, between the same parties, in the District Court, were done and performed under the same contract with defendant, said former suit is a bar to this action, and the plaintiff cannot recover.

2. That the record and judgment in the case of *Caffrey v. Logan,* D. C., No. 1370, Dec. T., 1855, is a bar to this action, and the plaintiff cannot recover.

The court declined so to charge, and there was a verdict and judgment for the plaintiff for $71.05; whereupon the defendant removed the cause to this court, and assigned for error the refusal of the court below to charge the jury in accordance with the points submitted by him.

*E. M. Paxson,* for plaintiff in error.—The cause of action was entire. It was upon one contract of hiring. If more than one suit can be brought upon it, then, by analogy, a separate suit could be maintained for each day's work. The cases of Hess *v.* Heeble, 6 *S. & R.* 57; Sterner *v.* Gower, 3 *W. & S.* 136; and Croft *v.* Steele, 6 *Watts* 373, merely decide that where there are different counts for separate and distinct causes of action, and the record of the former suit shows that a part of the claim only was passed upon by the jury, a subsequent suit can be maintained for the residue; but when the claim is indivisible and *in solido,* the case is different: Farrington *v.* Payne, 15 *Johns.* 432; Smith *v.* Jones, *Ibid.* 229.

*Brightly,* for defendant in error.—In the original cause brought in the District Court, a bill of particulars was furnished to the defendant, exhibiting three several and distinct claims: 1. For work performed between 10th July 1854 and 16th September 1854, at $1.12½ per day. 2. For work performed between 7th November 1854 and 5th November 1855, at $1 per day (which is the claim now in controversy). 3. For work performed from April 1855 to November 1855, at $1 and $1.50 per day.

[Logan v. Caffrey.]

The bill of particulars shows that the three several claims of the plaintiff were entirely distinct matters, and there was nothing in the evidence to indicate that all the work performed for the defendant was done under the same contract; there was nothing therefore from which the jury could find such a fact, and consequently no error in the learned judge declining so to charge.

If the contract was not entire, and there was no evidence that it was so, the judgment in the District Court was no bar to the present claim: Hess v. Heeble, 6 *S. & R.* 429; Wilson v. Hamilton, 9 *S. & R.* 429; Croft v. Steele, 6 *Watts* 375; Sterner v. Gower, 3 *W. & S.* 143; Kane v. Fisher, 2 *Watts* 246; Carmony v. Hoober, 5 *Barr* 308.(a)

The opinion of the court was delivered by

WOODWARD, J.—It must be assumed that the jury would have found, if permitted to pass upon the question, that the work and labour sued for in this action, and the work and labour for which a recovery was had in the former suit between the same parties, in the District Court, were done and performed under the same contract with the defendant; for such was the tenor of the point in which the court was called on to say that the former suit was a bar to this action. The court declined to affirm the point, and thus withheld the question of fact from the jury.

The first answer to the error assigned upon this ruling is, that there was no evidence on which to submit the question of fact; but this is not a well considered answer. There was the bill of discovery and answer thereto filed in the former case, setting forth the contract under which all of the plaintiff's labour had been performed; and the testimony of Hickey that the plaintiff was at work for defendant prior to November 1854 and after February 1855, that he was there altogether two or three years, worked pretty steadily except on rainy days, and that his wages were $1 per day; and the evidence of John Leo that the wages paid by Mr. Logan were $1 per day winter and summer.

Now, without adverting to all the evidence, here was enough to justify the counsel in submitting the point they did; and had the evidence been referred to the jury, they might well have found that the labour sued for in the two actions was rendered upon one and the same contract.

I repeat, that on a writ of error, we are bound to presume that the fact would have been so found.

The question of law then is, would that fact so found have made the former record a bar to the plaintiff's recovery in this action?

(a) See this question discussed by the Court of Appeals of New York, in Secor v. Sturgis, 2 *Smith* 548.

I do not think the *identity* of the contract in the two actions would necessarily have this effect; for two or more actions between the same parties may be maintained on the same contract, as on a bond for a sum of money payable in instalments: Sterner *v.* Gower, 3 *W. & S.* 143. And hence it was not error to disaffirm the first point in the precise phraseology in which it was expressed.

But in the second point the court was called on in general terms to declare the former judgment a bar to this action, which they declined to do.

This involved the question not only of the *identity*, but of the *entirety* of the contract in the two actions. If the former judgment was on the same contract and that an entire and indivisible one, it would have been, as a plea, an estoppel of the plaintiff, and was, as evidence under the general issue, a conclusive bar against his action. A party can have no second action on such a contract, not even on clear proof that no evidence was given as to part of the demand in controversy: Hess *v.* Heeble, 6 *S. & R.* 57; Carvill *v.* Garrigues, 5 *Barr* 152; Brockway *v.* Kinney, 2 *Johns.* 210; Miller *v.* Manice, 6 *Hill* 122. The language of Chancellor WALWORTH, in the last cited case, was: "If the same question was submitted to the jury in the first action, and the evidence in the last suit, *if it had been given in the first action, would have been equally available as in the last to entitle the plaintiff to recover under the state of the pleadings in both,* then the verdict and judgment in the first action, provided the defence is brought before the court in the second suit in proper form, is an absolute bar to any recovery therein."

To the same effect, see Judge DUNCAN'S observations in Wilson *v.* Hamilton, 9 *S. & R.* 429.

So where a tort consists in wrongfully taking several chattels, a plaintiff is not at liberty to split up his cause of action into as many parts as there are chattels; but if he recovers in an action for part, it concludes him as to the whole: Farrington *v.* Payne, 15 *Johns.* 432.

These rules of decision are founded in two maxims as old as the law itself: "*Nemo debet bis vexari si constet curiæ quod sit pro una et eadem causæ;*" and "*expedit reipublicæ ut sit finis litium.*"

But what is an entire, and what a divisible contract? By the Roman law, when several persons contracted an obligation jointly, each was only liable for his own part, unless it was particularly stipulated that they should be bound *in solido*; and when a person died leaving several heirs, each heir was only answerable for his own portion. So when an obligation was contracted in favour of several persons or devolved upon several heirs of one person, each was creditor for his respective part, provided the obligation could

[Logan *v.* Caffrey.]

from its nature be discharged in separate parts. Debts which might be so discharged in separate portions by the several debtors to the several creditors, were called divisible; those which only admitted of an entire discharge, were indivisible : 1 *Pothier Ob.* 171, *in notis.* Not to embarrass ourselves with the many curious and metaphysical distinctions which abound in the Roman law on this subject, it is sufficient for the present case to say, that an obligation to pay a fixed price for work and labour already rendered, is *unum debitum* and indivisible. Not that payment cannot be made in parts; but without a stipulation to that effect, nothing less than entire payment will discharge the debt or any part of it. If parties contract that a debt shall fall due and be payable in instalments, they have severed it, and we have seen that a recovery of one instalment even under a declaration which counts for the whole debt does not bar a subsequent suit for an instalment not due when the first suit was brought; 3 *W. & S.* 143; so where the consideration is to be rendered in parts, partial payments may be enforced without involving the whole debt; but where the consideration is fully executed, and there is no stipulation of severance, the obligation to pay is indivisible and entire, as much so as an obligation to build a house, to make a statue, or to paint a picture. And the entirety of the contract has regard to the obligation of the defendant, for it is upon that the action is founded. But if we look at the contract on the part of the plaintiff, what is it ? Under the evidence it is that he would serve the defendant as a farm hand, at the rate of $1 a day. The answer to the bill of discovery alleges various hirings at different prices, but the evidence is not so. Can a hireling, then, after periods of service under such a contract, bring separate suits for each day he wrought ? As well might the shopman bring separate suits for the tea, coffee, and sugar sold his customer, or for the packages delivered each day that the account was running. Such multiplicity of actions would not be tolerated. And after a judgment in one action it would bar the subsequent action, because the evidence, had it been given in the first, would have been equally available as in the last to entitle the plaintiff to recover.

These views lead to the conclusion that the two points submitted on the part of the defendant, taken together, should have been affirmed; and if they had been, the plaintiff would have been out of court. The withdrawal of the second item in the plaintiff's bill of particulars from the jury in the first case, did not entitle him to a subsequent action for it. It was part of his one demand—it was embraced by the pleadings; it was part of the consideration for the entire obligation of the defendant; it might have been recovered in the first suit—and for these reasons it could not be recovered in the second.

From an inspection of the claims on the one side and the other,

I am inclined to think the jury allowed the plaintiff this withdrawn item in the first action. His aggregate claim, including the second item in his bill, was $315.37. The payments and set-offs claimed by the defendant, amounted to $292.68. The difference, with interest allowed, would be about the amount of the first verdict. Although the defendant's cash payments were not all proved, it is probable the jury, seeing how his statements in his bill were in part corroborated by the plaintiff's answer, allowed them all; and if they did, they must have given the plaintiff the benefit of this withdrawn item, or they could not have found him the verdict they did.

If this were so, the rule of law as we apply it to the case works no injustice to the plaintiff, whilst it protects the defendant against a second payment of the same debt; but if it were not so, if the withdrawn item be a loss to the plaintiff—much as we may regret it—we cannot help it, for it is a necessary consequence of a most salutary rule of law.

Judgment reversed and a *venire facias de novo* awarded.